1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

8

NORTHERN DISTRICT OF CALIFORNIA

9
10
11

MARIA ELENA RUIZ OTERO, on behalf of
Ismael Caicedo-Ruiz,

Case No. 25-cv-06536-NC

12

Petitioner,

**ORDER GRANTING IN PART
AND DENYING IN PART
PETITIONER'S MOTION FOR
PRELIMINARY INJUNCTION**

13

v.

14

POLLY KAISER, et al.,

15

Defendants.

16
17
18
19
20
21
22
23
24
25
26
27
28

Petitioner Maria Elena Ruiz Otero brings this action on behalf of her son, Ismael David Caicedo-Ruiz, to protect Caicedo-Ruiz's constitutional rights. Her Petition for a Writ of Habeas Corpus alleges that Caicedo-Ruiz's Due Process rights under the Fifth Amendment were violated when Respondents detained him on August 1, 2025, without a pre-deprivation hearing, and that any future re-detention without a pre-deprivation hearing would also be a violation of his Due Process rights. The Court, through General Duty District Court Judge Eumi K. Lee, previously granted Petitioner's request for a temporary restraining order (TRO) on August 3, 2025, and (1) ordered Respondents to release Caicedo-Ruiz and (2) enjoined Respondents from re-detaining Caicedo-Ruiz without notice and a pre-deprivation hearing before a neutral decisionmaker, and from removing him from the United States.

United States District Court
Northern District of California

Before the Court is Petitioner's request for a preliminary injunction to continue to protect Caicedo-Ruiz's Due Process rights pending the habeas proceeding with this Court. The principal issue to be decided is whether the Government violates a noncitizen's Due Process rights when it re-detains them without a pre-deprivation hearing after releasing them under § 1226(a)—and specifically whether those rights are violated when the Government re-detains them by either switching their 8 U.S.C. § 1226(a) discretionary detention scheme to a 8 U.S.C. § 1225(b)(2) mandatory detention scheme and/or by moving to dismiss their 8 U.S.C. § 1229a full removal proceedings to pursue 8 U.S.C § 1225(b)(1) expedited removal proceedings with mandatory detention.

For the reasons set forth below, the Court GRANTS Petitioner's requested preliminary injunction of enjoining and restraining Respondents from re-detaining Caicedo-Ruiz without notice and a pre-deprivation hearing before a neutral decisionmaker and DENIES the remainder of Petitioner's requested preliminary injunction, including enjoining Respondents from transferring Caicedo-Ruiz outside this District.

# I.     FACTUAL BACKGROUND

## A.     Caicedo-Ruiz's Initial Arrest and Detention, Re-Arrest and Re-Detention, and Removal Proceedings

Ismael David Caicedo-Ruiz is the 20-year-old son of Petitioner Maria Elena Ruiz Otero.  ECF 1 ¶ 1.  Caicedo-Ruiz, who is a citizen of Colombia, entered the United States near Calexico, California on or around November 9, 2023.  ECF 14-1, Declaration of Jennifer Ramirez (Ramirez Decl.) ¶ 5.  At approximately 7:15 a.m. on the same day, he was arrested by a U.S. Customs and Border Protection (CBP) agent approximately 23 miles east of the Tecate Port of Entry (which is approximately 100 yards north of the United States/Mexico International Boundary).  Ramirez Decl., Ex. 1 (Form I-213) at 2. He was transported to the Boulevard Station for initial processing and then was transported to San Diego for further processing.  *Id.* at 2.  He was placed in a holding room and was in custody until November 10, 2023.  *Id.* at 3.

On November 10, 2023, CBP agents released Caicedo-Ruiz on his own

recognizance under pending removal proceedings with a notice to appear in immigration court.  Ramirez Decl. ¶ 6.  While being released, Caicedo-Ruiz was served with a Form I-220A, Order of Release on Recognizance, which explicitly stated that he was "being released on [his] own recognizance" "in accordance with section 236 of the Immigration and Nationality Act [INA]," codified as 8 U.S.C. § 1226, provided that he complies with certain conditions.  Form I-213 at 3; Ramirez Decl., Ex. 2 (Form I-220A) at 1.  These conditions included reporting for any hearing or interview as directed and refraining from violating any local, state, or federal laws or ordinances.  Form I-220A at 1.

The Order of Release on Recognizance also stated that Caicedo-Ruiz was being placed in removal proceedings.  *Id.*  On November 13, 2023, CBP placed Caicedo-Ruiz into full removal proceedings under Section 240 of the INA, codified as 8 U.S.C. § 1229a, as an alien present without admission or parole.  Ramirez Decl. ¶ 7.  Caicedo-Ruiz was charged with removability under Section 212(a)(6)(A)(i) of the INA, codified as 8 U.S.C. § 1182(a)(6)(A)(i).  *Id.*

The Court has not been presented with any allegations that Caicedo-Ruiz failed to meet any of the conditions of his release.  For the nearly two years that Caicedo-Ruiz remained free after his initial detention, nothing has transpired to disturb CBP's initial finding that Caicedo-Ruiz was neither dangerous nor a flight risk.  ECF 3 at 4.  He continues to have no criminal history.  *Id.*  He also appeared for both his master calendar hearings in his § 1229a removal proceedings: one on January 24, 2025, and one on August 1, 2025.  ECF 4 at 4; Ramirez Decl. ¶¶ 8–9.

At Caicedo-Ruiz's August 1, 2025, hearing, Government counsel orally moved to dismiss his § 1229a removal proceedings so it could seek to pursue expedited removal under Section 235(b)(1) of the INA, codified as 8 U.S.C. § 1225(b)(1), instead.  Ramirez Decl. ¶ 9.  The immigration judge (IJ) did not grant the Government's motion to dismiss on that day and gave Caicedo-Ruiz ten days to respond to the motion.  ECF 1 ¶ 3.

Immediately following Caicedo-Ruiz's August 1, 2025, hearing, upon his exit of the courtroom, U.S. Immigration and Customs Enforcement (ICE) arrested and detained

United States District Court
Northern District of California

1    Caicedo-Ruiz.  ECF 1 ¶ 4.  Respondents allege that ICE did so pursuant to § 1225(b).

2    Ramirez Decl. ¶ 9.  Petitioner alleges that ICE did not tell Caicedo-Ruiz why he was being

3    arrested.  ECF 1 ¶ 4.  After his arrest on August 1, 2025, Caicedo-Ruiz was detained in a

4    holding room in San Francisco pending his transfer to a detention facility.  Ramirez Decl.

5    ¶ 10.  He stayed there until ICE eventually released him on August 4, 2025, pursuant to

6    Judge Lee's TRO Order.  *Id.*; *see supra* Section I.B.

7         On August 20, 2025, the IJ dismissed Caicedo-Ruiz's § 1229a removal proceedings.

8    ECF 19, Ex. 1.  On September 16, 2025, Caicedo-Ruiz appealed the dismissal of his §

9    1229a removal proceedings to the Board of Immigration Appeals (BIA), which remains

10   pending.  ECF 22.  Respondents continue to indicate the Department of Homeland

11   Security's (DHS) intent to initiate expedited removal proceedings if the motion to dismiss

12   is granted.  ECF 14 at 6.

13        **B.      Petitioner's Habeas Proceedings**

14        On August 3, 2025, following Caicedo-Ruiz's August 1, 2025, re-arrest and re-

15   detention, Petitioner filed a Petition for a Writ of Habeas Corpus and an Ex Parte Motion

16   for a Temporary Restraining Order (TRO).  ECF 1; ECF 2; ECF 3.  In both, Petitioner

17   argues that Caicedo-Ruiz's August 1, 2025, to August 4, 2025, detention violated his

18   constitutional Due Process rights, as would any other future re-detention without a pre-

19   deprivation hearing before a neutral decisionmaker.  ECF 1 ¶¶ 64–73; ECF 3 at 8.  As

20   such, to protect Caicedo-Ruiz's rights while this case is pending and beyond, Petitioner

21   requested the Court to (1) "immediately release[] [Caicedo-Ruiz] from Respondents'

22   custody, and either "enjoin[] Respondents from re-detaining him absent further order of

23   this Court" or "enjoin[] Respondents from re-detaining him unless they demonstrate at a

24   pre-deprivation bond hearing, by clear and convincing evidence, that [Caicedo-Ruiz] is a

25   flight risk or danger to the community such that his physical custody is required," and (2)

26   prohibit Respondents "from transferring [Caicedo-Ruiz] out of this District and/or

27   removing him from the country until these habeas proceedings have concluded."  ECF 3 at

28   10; *see also* ECF 1 at 16.

United States District Court
Northern District of California

1  Later on August 3, 2025, Judge Lee granted a modified version of Petitioner's

2  requested TRO. ECF 4. Specifically, Judge Lee ordered Respondents to "immediately

3  release Caicedo Ruiz from Respondents' custody" and "enjoined and restrained

4  [Respondents] from re-detaining Caicedo Ruiz without notice and a pre-deprivation

5  hearing before a neutral decisionmaker, and from removing him from the United States."

6  ECF 4 at 6. Judge Lee declined to order that Caicedo-Ruiz remain within the Northern

7  District of California. *Id.* at 6 n.1. ICE consequently released Caicedo-Ruiz on his own

8  recognizance pursuant to the Judge Lee's TRO Order. Ramirez Decl. ¶ 10.

9  Judge Lee also ordered Respondents to show cause as to why a preliminary

10  injunction should not issue. ECF 4 at 6. The Court addresses this question in this Order.

11  Respondents submitted their brief opposing Petitioner's Motion for Preliminary Injunction.

12  ECF 14. Petitioner then filed a reply. ECF 16. The Court held an Order to Show Cause

13  Hearing. ECF 17. During the hearing, the Court granted leave to file supplemental

14  materials, which Petitioner and Respondents timely filed. ECF 18; ECF 19. Petitioner and

15  Respondents then filed their respective supplemental briefs with additional argument. ECF

16  22; ECF 23.

17  Judge Lee's TRO Order was ordered to remain in effect until further Order of this

18  Court. ECF 17. All parties consented to magistrate judge jurisdiction after this case was

19  transferred to the undersigned. ECF 12; ECF 13.

20  **II.  STATUTORY BACKGROUND**

21  The relevant statutory framework for the detention and removal of inadmissible

22  noncitizens in the United States is described below.

23  **A.  Full Removal Proceedings Under Section 240 of the INA, 8 U.S.C.**

24  **§ 1229a**

25  Full removal proceedings under 8 U.S.C. § 1229a are "the standard mechanism for

26  removing inadmissible noncitizens." *Make the Rd. N.Y. v. Noem*, No. 25-cv-190-JMC,

27  2025 WL 2494908, at *2 (D.D.C. Aug. 29, 2025). These proceedings are initiated by

28

United States District Court
Northern District of California

serving the noncitizen with a Form I-862 "notice to appear" in immigration court.  8 U.S.C. § 1229(a)(1).

Full removal proceedings involve an evidentiary hearing before an IJ.  *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at *1 (N.D. Cal. Sep. 12, 2025) (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020)).  Either party can appeal the IJ's decision to the BIA, and if the BIA upholds a removal order, the noncitizen can appeal that decision to a United States court of appeals.  8 C.F.R. §§ 1240.15, 1003.1; 8 U.S.C. § 1252.

### 1.    Discretionary Detention under Section 236 of the INA, 8 U.S.C. § 1226(a)

Under the "default rule," 8 U.S.C. § 1226(a), a noncitizen "may be arrested and detained" "[o]n a warrant issued by the Attorney General" while their removal proceedings are pending.  *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).  Detention under § 1226(a), however, is nonmandatory for noncitizens not charged with, arrested for, or convicted of certain criminal offenses enumerated in § 1226(c).  8 U.S.C. § 1226(a).  The Government is given discretion under § 1226(a) to release noncitizens on "bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or . . . conditional approval."  *Id.*

Any officer authorized to issue a warrant of arrest (e.g., a DHS officer) may make the initial determination of detention and release a noncitizen apprehended under § 1226(a) if he or she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)).

If the initial determination is to detain the noncitizen, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention," which are determined by an IJ.  *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 CFR §§ 236.1(d)(1), 1236.1(d)(1)).  "If, at this hearing, the detainee demonstrates by the

6

preponderance of the evidence that he or she is not a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk, the IJ will order his or her release." *Rodriguez Diaz*, 53 F.4th at 1197 (citations omitted).

If the noncitizen is released, whether by the DHS officer's initial determination or by the IJ's bond hearing determination, the Government still has authority to revoke a noncitizen's bond or parole, re-arrest them, and detain them "at any time," subject to constitutional requirements. 8 U.S.C. § 1226(b); *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). If a noncitizen is re-detained after the DHS officer's initial determination, federal regulations still provide that "aliens under § 1226(a) receive bond hearings at the outset of the detention," and, as explained above, an IJ will then assess the noncitizen's danger to community and flight risk to determine their detention or release. *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *Rodriguez Diaz*, 53 F.4th at 1197 (citations omitted). If the noncitizen is re-detained after the IJ has ruled to release them in their bond hearing, the Government is limited in its ability to re-detain that noncitizen—it "cannot redetain" a noncitizen "absent changed circumstances . . . such as reinvolvement with the criminal justice system." *See Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) (citing *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981)) (finding that if ICE did not appeal the IJ's release of the noncitizen on bond, making the IJ's decision administratively final, it cannot re-detain the noncitizen without changed circumstances).

### 2.    Mandatory Detention under Section 235(b)(2) of the INA, 8 U.S.C. § 1225(b)(2)

If noncitizens are not being subjected to § 1226(a), they can be subject to mandatory detention under 8 U.S.C. § 1225(b)(2) while their § 1229a removal proceedings are pending. *Salcedo Aceros*, 2025 WL 2637503, at *8 (finding that "Sections 1226(a) and 1225(b) cannot be applied simultaneously" because their "detention regimes are facially inconsistent"); 8 U.S.C. § 1225(b)(2)(A) ("[I]f the examining immigration officer

1    determines that an alien seeking admission is not clearly and beyond a doubt entitled to be

2    admitted, the alien shall be detained for a proceeding under section 1229a of this title.").

3        Section 1225(b)(2) applies to noncitizens who are "applicants for admission,"[1] are

4    "seeking admission," and are not covered by the expedited removal provisions in

5    § 1225(b)(1). Section 1225(b)(1), as explained more fulsomely in the next section, covers

6    two categories of noncitizens: (1) those "arriving in the United States" who are determined

7    by an immigration officer to be inadmissible due to misrepresentation or failure to meet

8    documents requirements, and (2) those who are inadmissible due to misrepresentation or

9    failure to meet documents requirements, have not "been admitted or paroled into the

10   United States," have not "affirmatively shown, to the satisfaction of an immigration

11   officer, that [they have] been physically present in the United States continuously for the

12   2-year period immediately prior to the date of the determination of inadmissibility," and

13   have been designated by the Attorney General for expedited removal. *Valencia Zapata v.*

14   *Kaiser*, No. 25-cv-07492-RFL, 2025 WL 2741654, at *3 (N.D. Cal. Sep. 26, 2025) (citing

15   § 1225(b)(1)(A)). Thus, § 1225(b)(2) would include, for example, noncitizens who are

16   arriving in the United States, seeking admission, and are inadmissible for some reason

17   other than misrepresentation or failure to meet documents requirements (such as those

18   having certain types of criminal convictions or those who would pose a foreign policy risk

19   or are associated with terrorists, the Communist party, or Nazi activity). *Id.* at *4 (N.D.

20   Cal. Sep. 26, 2025) (citing 8 U.S.C. § 1182(a)(2)–(3)).

21       **B.    Expedited Removal Proceedings under Section 235(b)(1) of the INA, 8**

22            **U.S.C. § 1225(b)(1))**

23       For certain applicants for admission, 8 U.S.C. § 1225 authorizes a more streamlined

24   "expedited removal." *Valencia Zapata*, 2025 WL 2741654, at *2–3. Section 1225(b)(1)

25   provides that "[i]f an immigration officer determines that an alien (other than an alien

26   described in subparagraph (F)) who is arriving in the United States or is described in

27   _____

28   [1] An "applicant for admission" is "[a]n alien present in the United States who has not been
     admitted or who arrives in the United States." 8 U.S.C § 1225(a).

clause (iii) is inadmissible under section 212(a)(6)(C) or 212(a)(7) [8 U.S.C. § 1182(a)(6)(C) or 1182(a)(7)], the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 208 [8 U.S.C. § 1158] or a fear of persecution."

Thus, two groups of "applicants for admission" are subject to expedited removal under § 1225(b)(1). First, there are "arriving" noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. 8 U.S.C. § 1225(b)(1)(A)(i). The implementing agency regulations define "arriving alien" as applicants for admission "coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. The second group includes noncitizens who meet all of the following criteria: (1) they are inadmissible due to 8 U.S.C. § 1182(a)(6)(C) (misrepresentation) or 8 U.S.C. § 1182(a)(7) (lack of a valid entry document); (2) they have not "been admitted or paroled in the United States;" (3) they have not "affirmatively shown, to the satisfaction of an immigration officer, that [they have] been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (4) they are among those whom the Secretary of Homeland Security has designated for expedited removal. 8 U.S.C. § 1225(b)(1)(A)(iii).

### 1. Mandatory Detention under 8 U.S.C. § 1225(b)(1)

Noncitizens who are subjected to expedited removal under § 1225(b)(1) are mandatorily detained "pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).

### C.    The Government's Change in Position in Applying 8 U.S.C §§ 1225 and 1226

Historically, until this year, DHS has applied § 1226(a) and its regime of discretionary release and review of detention "to the vast majority of noncitizens allegedly in this country without valid documentation"—a practice codified by regulation. *Salcedo Aceros*, 2025 WL 2637503, at *3. As early as 1997, in the regulations implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, the Immigration

1   and Naturalization Service and the Executive Office for Immigration Review stated that
2   "[d]espite being applicants for admission, aliens who are present without having been
3   admitted or paroled (formerly referred to as aliens who entered without inspection) will be
4   eligible for bond and bond redetermination." *Valencia Zapata*, 2025 WL 2741654, at *4
5   (citing Inspection and Expedited Removal of Aliens, 62 Fed. Reg. at 10323).

6          In 2025, however, DHS's policy changed dramatically. *Salcedo Aceros*, 2025 WL
7   2637503, at *4. DHS revised its § 1225 designation to "apply expedited removal to the
8   fullest extent authorized by statute." *Id.* (citing Designating Aliens for Expedited
9   Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025)). The Secretary of Homeland Security
10  memorandum directed federal immigration officers to "consider . . . whether to apply
11  expedited removal" to "any alien DHS is aware of who is amenable to expedited removal
12  but to whom expedited removal has not been applied." ECF 1 ¶ 40. Officers are
13  encouraged to "take steps to terminate any ongoing removal proceeding and/or any active
14  parole status." *Id.* Petitioner alleges that since mid-May of 2025, DHS has made a
15  practice of appearing at regular § 1229a removal proceedings of a noncitizen released
16  under § 1226(a) in immigration court, moving to dismiss their proceedings without notice
17  to place them in § 1225(b)(1) expedited removal proceedings, and then re-arresting and
18  re-detaining them under § 1225(b) without a pre-deprivation hearing or a showing of
19  changed circumstances. ECF 1 at ¶¶ 43–50.

20         DHS's new practice, which Respondents implemented in this case, lays at the heart
21  of Petitioner's constitutional due process claim. The Court must assess whether
22  Respondents' practice of switching tracks from a § 1226(a) release to a § 1225(b)(2)
23  mandatory detention and/or from a § 1229(a) removal to a § 1225(b)(1) expedited removal
24  with mandatory detention, with no notice or pre-deprivation hearing, causes any
25  irreparable Due Process harm to Caicedo-Ruiz.

## III.   LEGAL STANDARD

27         A "preliminary injunction is an extraordinary remedy never awarded as of right."
28  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To secure a preliminary

United States District Court
Northern District of California

10

injunction, a plaintiff "must make a clear showing" of the *Winter* factors: that '[1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345–46 (2024) (quoting *Winter*, 555 U.S. at 20). "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (citing *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (emphasis in original)). When the party opposing a preliminary injunction is the government, the balance of equities and public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## IV.    ANALYSIS

Petitioner requested the Court to (1) "immediately release[] [Caicedo-Ruiz] from Respondents' custody, and either "enjoin[] Respondents from re-detaining him absent further order of this Court" or "enjoin[] Respondents from re-detaining him unless they demonstrate at a pre-deprivation bond hearing, by clear and convincing evidence, that [Caicedo-Ruiz] is a flight risk or danger to the community such that his physical custody is required," and to (2) prohibit the government "from transferring [Caicedo-Ruiz] out of this District and/or removing him from the country until these habeas proceedings have concluded." ECF 3 at 10. Taking into account the issuance of Judge Lee's TRO Order and the August 4, 2025, release of Caicedo-Ruiz, the Court assesses Petitioner's requests. For the following reasons, the Court GRANTS Petitioner's requested preliminary injunction of enjoining and restraining Respondents from re-detaining Caicedo-Ruiz without notice and a pre-deprivation hearing before a neutral decisionmaker and DENIES the remainder of Petitioner's requested preliminary injunction.

United States District Court
Northern District of California

**A.      The Court Enjoins Respondents From Re-Detaining Caicedo-Ruiz Without a Pre-Deprivation Hearing Before a Neutral Decisionmaker**

The Court first applies the *Winter* factors to determine whether it should follow Judge Lee's TRO and issue a preliminary injunction to enjoin and restrain Respondents from re-detaining Caicedo-Ruiz without notice and a pre-deprivation hearing before a neutral decisionmaker.

**1.      Petitioner Will Likely Succeed on the Merits of her Procedural Due Process Claim**

The Court considers the first *Winter* factor, whether the Petitioner is likely to succeed on the merits of her procedural due process claim that the Due Process Clause entitles Caicedo-Ruiz to a hearing before he may be re-detained.[2]   The Court finds that Petitioner is likely to succeed because Caicedo-Ruiz has a protectable liberty interest under the Due Process Clause, and that giving him a pre-deprivation hearing before a neutral decisionmaker is sufficient to safeguard his due process rights.

**a.      Caicedo-Ruiz is Entitled to Due Process Clause Protections Because He Has a Protectable Liberty Interest**

The Due Process Clause protects all persons, including noncitizens, from deprivations of life, liberty, and property without due process of law.  U.S. Const. amend. V; *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").  In particular, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690.  The Due Process Clause therefore typically

---

[2] Petitioner also brings a substantive due process challenge to Caicedo-Ruiz's detention, arguing that Respondents have not shown a legitimate purpose for re-detaining him.  ECF 3 at 4.  Because granting a preliminary injunction enjoining Respondents from re-detaining Caicedo-Ruiz without a pre-deprivation hearing obviates the threat of any imminent deprivation of his substantive due process rights, the Court need not address his substantive due process claim at this preliminary stage of the proceedings.  *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1031 n.1 (N.D. Cal. July 24, 2025).

1    requires a hearing of some sort before the government may deprive a person of liberty.

2    *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

3           Even when an initial decision to detain or release an individual is discretionary, the

4    government's subsequent release of the individual from custody creates "an implicit

5    promise" that the individual's liberty will be revoked only if they fail to abide by the

6    conditions of their release. *Calderon v. Kaiser,* No. 25-cv-06695-AMO, 2025 WL

7    2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482

8    (1972)). As such, a noncitizen released from custody pending removal proceedings still

9    has a protected liberty interest in remaining out of custody. *Id.* (citations omitted).

10                    **i.      Caicedo-Ruiz has a Protected Liberty Interest**

11                             **Because the Government Created an "Implicit**

12                             **Promise" Under 8 U.S.C. § 1226(a), Regardless of**

13                             **Whether He is a Noncitizen Subject to Expedited**

14                             **Removal**

15          The Court finds that Caicedo-Ruiz has a protected liberty interest under the Due

16    Process Clause. Caicedo-Ruiz was released on his own recognizance from ICE custody

17    pending removal proceedings as long as he complied with the conditions outlined in Form

18    I-220A under § 1226. Form I-220A. Thus, Caicedo-Ruiz's release from custody was an

19    "implicit promise" that his liberty would not be revoked unless he violated the conditions

20    of his release. *See Calderon,* 2025 WL 2430609, at *2. Respondents have not alleged that

21    Caicedo-Ruiz has not complied. Caicedo-Ruiz therefore has a protected liberty interest in

22    remaining out of custody. *Id.* (finding that a petitioner had a protected liberty interest in

23    remaining out of custody after ICE released her on her own recognizance provided that she

24    complied with certain conditions and the government did not show she violated those

25    conditions).

26          The Court is unpersuaded by Respondents' argument that Caicedo-Ruiz "lack[s]

27    any liberty interest in avoiding removal or to certain additional procedures" simply

28    because he is a noncitizen subject to expedited removal. ECF 14 at 9. To begin with,

United States District Court
Northern District of California

noncitizens, even those in the U.S. unlawfully, are provided the protections of the Due Process Clause. *Zadvydas*, 533 U.S. at 693. Further, Respondents' cited cases used to support their argument only discuss due process rights for noncitizens seeking applications for *admission*, not for those who have been *detained*. *See, e.g., Landon v. Plascencia*, 459 U.S. 21, 32 (1982) ("[A]n alien seeking initial *admission* to the United States requests a privilege and has no constitutional rights regarding his application.") (emphasis added); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) ("At the outset we wish to point out that an alien who seeks *admission* to this country may not do so under any claim of right.") (emphasis added); *Thuraissigiam*, 591 U.S. at 140 ("[A]n alien in respondent's position, therefore, has only those rights regarding *admission* that Congress has provided by statute.") (emphasis added); *Dave v. Ashcroft*, 363 F.3d 649, 653 (7th Cir. 2004) (finding that the petitioner cannot raise a due process challenge for the *denial of his application for cancellation of removal*). Here, Petitioner is challenging Caicedo-Ruiz's *detention*, not the processes by which his application for admission is decided. Respondents' cited cases are therefore inapplicable. *See Valencia Zapata*, 2025 WL 2741654, at *7 (finding that cases limiting noncitizens' due process rights to challenge how applications for admissions are decided are inapplicable to cases where petitioners are challenging their detention).

Caicedo-Ruiz therefore has due process rights applying to detention during his removal proceedings.

## ii.  The Government Cannot Subject Caicedo-Ruiz to Mandatory Detention Under 8 U.S.C. § 1225(b)(2) or 8 U.S.C. § 1225(b)(1)

The Court is also unpersuaded by Respondents' argument that Caicedo-Ruiz does not have a liberty interest because he is subject to mandatory detention regardless of the result of his § 1229a proceedings. ECF 14 at 7–8.

As an initial matter, the Court agrees with both parties that Caicedo-Ruiz's full removal proceedings under § 1229a are still pending despite the IJ dismissing his case.

1   *See* ECF 23 at 2; ECF 16 at 3.  This is because Caicedo-Ruiz appealed the decision and the

2   "decision is not final until exhaustion of the appeals."  *Patel v. Tindall*, No. 25-cv-373-

3   RGJ, 2025 WL 2823607, at *4 (W.D. Ky. Oct. 3, 2025) (finding that the petitioner's

4   "section 1229a proceedings continue to be active, as the decision of an immigration judge

5   becomes final upon . . . expiration of the time of appeal" and the petitioner "timely filed an

6   appeal of the immigration judge's decision").

7       Respondents argue that Caicedo-Ruiz can be re-detained without a pre-deprivation

8   hearing under § 1225(b)(2), even when his § 1229a removal proceedings are pending.

9   ECF 14 at 7.  The Court disagrees.  The Government chose to release Caicedo-Ruiz on

10  conditional parole under § 1226(a) and consequently, to not detain him under

11  § 1225(b)(2)—the Government's decision created a reliance interest in Caicedo-Ruiz's

12  continued freedom as long he abided by the terms of his release.  Form I-220A; *see*

13  *Salcedo Aceros*, 2025 WL 2637503, at *8.  Caicedo-Ruiz's reliance interest, which is

14  protected by the Due Process Clause, cannot be unilaterally abrogated without process by

15  the Government simply switching tracks.  Furthermore, the Government cannot

16  simultaneously apply §§ 1226(a) and 1225(b) because the two statutes are "facially

17  inconsistent"—one provides for discretionary release with procedural protection and the

18  other mandates detention without discretion.  *Salcedo Aceros*, 2025 WL 2637503, at *8.  It

19  follows that Caicedo-Ruiz was and is subjected to § 1226(a), and not § 1225(b)(2), and

20  therefore is protected by the Due Process rights created by § 1226(a).

21      Additionally, because Caicedo-Ruiz can only be subjected to §1226(a), it does not

22  matter whether the Government has the authority to detain Caicedo-Ruiz under

23  § 1225(b)(2) in the first place.  However, the Court notes that there are serious questions

24  going to the merits of whether the Government can apply § 1225(b)(2) to noncitizens like

25  Caicedo-Ruiz who have been released by DHS on their own recognizance into the interior

26  of the country.  See *Salcedo Aceros*, 2025 WL 2637503, at *8 (collecting cases where

27  courts examined the text, structure, agency application, and legislative history of §

28

United States District Court
Northern District of California

1225(b)(2) and concluded that it applies only to noncitizens "seeking admission," a category that does not include noncitizens living in the interior of the country).

As such, Caicedo-Ruiz has a protected liberty interest under the Due Process Clause to remain out of custody pending his removal proceedings and cannot be detained under § 1225(b)(2).[3]

> **b.      The Court Applies the *Mathews* Test and Finds That It Supports Caicedo-Ruiz's Right to a Pre-Deprivation Hearing Before a Neutral Decisionmaker**

"Once it is determined that due process applies, the question remains what process is due." *Morrissey,* 408 U.S. at 481. To determine what procedures are constitutionally sufficient to protect a liberty interest, courts apply the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Calderon*, 2025 WL 2430609 at *3.

The Court is not persuaded by Respondents' argument that *Mathews* does not apply here because the Supreme Court and Ninth Circuit have not explicitly used it to analyze Due Process claims brought by noncitizens held in immigration detention. ECF 14 at 8. However, the Ninth Circuit *has* applied the *Mathews* test to a procedural due process challenge to detention under § 1226(a) in *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022). While it "assume[d] without deciding" to do so, the court in *Rodriguez Diaz* noted that the Ninth Circuit, and other circuits, have regularly applied *Mathews* in due process challenges to removal proceedings. *Id.* Thus, the Court joins the many district courts in this Circuit that have applied *Mathews* in this context. *See Salcedo Aceros*, 2025 WL 2637503 at *5 (collecting cases).

The Court therefore determines the extent of Caicedo-Ruiz's due process rights by considering the three factors in the *Mathews* test: (1) the private interest affected; (2) the

---

[3] Respondents also argue that if the immigration court grants DHS's motion to dismiss Caicedo-Ruiz's § 1229a removal proceedings, "his re-detention will remain mandatory [and] proceed under § 1225(b)(1)." However, this argument requires a level of speculation that the Court declines to take since Caicedo-Ruiz's § 1229a removal proceedings are still currently pending. *See Calderon*, 2025 WL 2430609, at *3.

1    risk of an erroneous deprivation; and (3) the Government's interest. *Mathews*, 424 U.S. at

2    335.  The Court finds that all three of the *Mathews* factors indicate that Caicedo-Ruiz has a

3    right to a pre-deprivation hearing before a neutral decisionmaker.

###### i.    Caicedo-Ruiz's Private Interest is Affected

5        First, Caicedo-Ruiz's private interest is heavily affected.  As explained above,

6    Caicedo-Ruiz has a substantial private interest in remaining out of custody.  *Supra* Section

7    IV.A.1.  Further, he has an interest in his "ability to worship, be with family, and enjoy the

8    peace and safety he could not find in Colombia."  ECF 3 at 6; *see Morrissey*, 408 U.S. at

9    482 (finding that being "free to be with family and friends and to form the other enduring

10   attachments of normal life" is one of the "core values of unqualified liberty").  To deprive

11   him of such would create a "grievous loss."  *Id.*  The first *Mathews* factor weighs in

12   Caicedo-Ruiz's favor.

###### ii.    There is a Risk of Erroneous Deprivation

14       Second, it is clear that a pre-deprivation hearing would significantly lessen the risk

15   of an erroneous detention.  Where, as here, "[the petitioner] has not received any bond or

16   custody . . . hearing," "the risk of an erroneous deprivation [of liberty] is high" because

17   neither the Government nor Caicedo-Ruiz has had an opportunity to determine whether

18   there is any valid basis for his detention.  *See Pinchi*, 792 F. Supp. 3d at 1035 (quoting

19   *Singh v. Andrews*, No. 25-cv-00801, 2025 WL 1918679, at * 7 (E.D. Cal. July 11, 2025)).

20   Civil immigration detention is permissible only to prevent flight or protect against danger

21   to the community, but Respondents have offered no evidence, including in the proceedings

22   before this Court, that Caicedo-Ruiz's detention would serve either purpose.  *See id.*

23   (citing *Zadvydas*, 533 U.S. at 690).  Like in *Singh,* Caicedo-Ruiz has no criminal history

24   and was arrested after he attended his immigration court hearing.  ECF 3 at 4; Ramirez

25   Decl. ¶ 9; *see Singh*, 2025 WL 1918679, at *7.  As such, "the probable value of additional

United States District Court
Northern District of California

procedural safeguards . . . is high." *See id.* The second *Mathews* factor therefore weighs in Caicedo-Ruiz's favor.

### iii. Respondents' Interest in Detaining Caicedo-Ruiz Without First Submitting to a Pre-Deprivation Hearing is Minimal

Third, any countervailing government interest against providing a pre-deprivation hearing here is minimal. Respondents have not identified any legitimate interest that would support arresting or detaining Caicedo-Ruiz without a pre-deprivation hearing. Such a hearing would not obstruct the removal process, and detention for its own sake is not a legitimate governmental interest. *Salcedo Aceros*, 2025 WL 2637503, at *12. Respondents have not alleged any concern with a hearing delaying the Government's efforts to remove him, nor have they claimed that the circumstances have changed since DHS's initial determination that Caicedo-Ruiz should be released on his own recognizance. *See Pinchi*, 792 F. Supp. 3d at 1036. Respondents also have not asserted that the cost of providing a hearing would impose a financial or administrative burden. *See Calderon*, 2025 WL 2430609, at *4. In fact, "[i]n immigration court, custody hearings are routine and impose a 'minimal' cost." *Singh*, 2025 WL 1918679, at *8 (citations omitted). Thus, this Court concludes that the Government's interest in re-detaining Caicedo-Ruiz without a pre-deprivation hearing is low, and the third *Mathews* factor weighs in Caicedo-Ruiz's favor.

In short, each of the *Mathews* factors favors Petitioner. Petitioner has therefore shown a likelihood of success on the merits that the Due Process Clause entitles Caicedo-Ruiz to a pre-deprivation hearing before a neutral decisionmaker prior to re-detention.

### 2.    Petitioner Has Shown that Caicedo-Ruiz Will Likely Suffer Irreparable Harm Absent the Preliminary Injunction

The Court next considers the second *Winter* factor—whether it is likely that Caicedo-Ruiz will suffer irreparable harm in the absence of preliminary relief—and finds that it weighs in favor of Petitioner.

Petitioner alleges that Caicedo-Ruiz will suffer irreparable injury from (1) facing the risk of re-detention by ICE "in violation of his Fifth Amendment rights" and (2) "physical and psychological trauma and separation from him from his family, church, and community." ECF 3 at 8–9.

Respondents attempt to argue that Caicedo-Ruiz's first alleged harm, "unlawful deprivation of liberty," is a harm "essentially inherent in detention" and therefore "cannot weigh this strongly in favor of" Petitioner. ECF 14 at 11 (citing *Lopez Reyes v. Bonnar*, No. 18-cv-07429-SK, 2018 WL 7474861, at *10 (N.D. Cal. Dec. 24, 2018)). However, Respondents misconstrue *Lopez Reyes*, which only states that harm that is akin to "psychological distress and the risk . . . [of not seeing] his sibling again" are inherent. *Lopez Reyes*, 2018 WL 7474861, at *10. Thus, Respondents overreach in their interpretation of what is an inherent harm and cannot be weighed strongly in favor of a petitioner. Indeed, contrary to Respondents' argument, the Ninth Circuit made clear that a likely unconstitutional deprivation of liberty is an immediate and irreparable harm. *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'").

Even if Respondents attempted use *Lopez Reyes* to discount Petitioner's second alleged irreparable harm of physical and psychological trauma, "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005). Thus, to demonstrate a likelihood of irreparable harm, it is enough for Petitioner to successfully show that Caicedo-Ruiz's risk of immediate re-detention of ICE

was likely in violation of his constitutional due process rights.  *See supra* Section III.A; *cf.*
*Marin All. For Med. Marijuana v. Holder*, 866 F. Supp.2d 1142 (N.D. Cal. 2011) (finding
that a presumption of irreparable harm based on a violation of the plaintiffs' constitutional
rights to be unavailing because the plaintiffs failed to demonstrate a sufficient likelihood of
success on the merits of their constitutional claims).

The Court therefore finds that Caicedo-Ruiz would likely suffer immediate and
irreparable harm absent injunctive relief and weighs the second *Winter* factor in favor of a
preliminary injunction.

### 3.    The Balance of Equities and Public Interest Heavily Favor a Preliminary Injunction

Finally, the Court considers the third and fourth *Winter* factors, the balance of
equities and public interest.  These two factors merge when the Government is the
opposing party, as is the case here.  *Nken*, 556 U.S. at 435.  The Court finds that both the
balance of equities and public interest favor a preliminary injunction.

The balance of equities favors Petitioner and Caicedo-Ruiz.  The potential harm to
Caicedo-Ruiz, as outlined in previous sections, is significant—he faces immediate and
potentially prolonged ICE detention.  *Supra* Sections IV.A.1., IV.B.  In contrast, the
"potential harm to the government is minimal"—"the only potential injury the government
faces is a short delay in detaining [Caicedo-Ruiz] if it ultimately demonstrates to a neutral
decisionmaker by clear and convincing evidence that [his] detention is necessary to
prevent danger to the community or flight."  *See Pinchi*, 792 F. Supp. 3d at 1037–38
(citations omitted).

Further, while "the public has a strong interest in upholding procedural protections
against unlawful detention," the Ninth Circuit has also "recognized that the costs to the
public of immigration detention are staggering."  *Id*.  While Respondents contend that the
Government has a "compelling interest in the steady enforcement of its immigration laws,"
it "cannot reasonably assert that it is harmed in any legally cognizable sense by being
enjoined from constitutional violations."  ECF 14 at 11; *see Calderon*, 2025 WL 2430609,

20

at *5 (citing *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983)).  And Petitioner here has successfully shown a likelihood of success on the merits of her constitutional claim against Respondents.  *Cf. Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) (finding that the district court did not err on denying the preliminary injunction because there was a competing public interest in the enforcement of existing laws and the plaintiffs did not show a likelihood of success on the merits of their constitutional claim).

"Faced with . . . a conflict between minimally costly procedures and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor."  *Singh*, 2025 WL 1918679, at *9 (quoting *Hernandez*, 872 F.3d at 996) (cleaned up).  The final two *Winter* factors therefore weigh in favor of a preliminary injunction.

In conclusion, the Court finds that all four *Winter* factors favor Petitioner.  The Court therefore in part extends Judge Lee's TRO and grants Petitioner's requested preliminary injunction of enjoining and restraining Respondents from re-detaining Caicedo-Ruiz without notice and a pre-deprivation hearing before a neutral decisionmaker.

**B.    The Court Declines to Issue the Remainder of Petitioner's Requests, Including Prohibiting Respondents from Transferring or Removing Caicedo-Ruiz Pending These Proceedings**

Because the Respondents are enjoined from detaining Caicedo-Ruiz without a pre-deprivation hearing and Caicedo-Ruiz is not detained, the remainder of Petitioner's requests are moot.

Petitioner's requests to prohibit Respondents from transferring Caicedo-Ruiz out of the District or removing him from out of the country are moot.  Respondents would need to re-detain Caicedo-Ruiz before they forcibly transfer or remove him, and they are already enjoined from re-detaining him without a pre-deprivation hearing.  Thus, Respondents would be unable to transfer or remove him before that.  Additionally, the Court agrees with Judge Lee that it is not necessary to prohibit the government transferring Caicedo-Ruiz out

1   of this District because it is "well-established" that "when the Government moves a habeas

2   petitioner after she properly files a petition naming her immediate custodian, the District

3   Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction

4   who has legal authority to effectuate the prisoner's release."  ECF 4 at 6 n.1 (citing

5   *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004)).  The Court therefore denies Petitioner's

6   requested preliminary injunction of prohibiting the Respondents from transferring

7   Caicedo-Ruiz out of this District and/or removing him from the country until these habeas

8   proceedings have concluded.

9       Further, because Caicedo-Ruiz is already out of custody, Petitioner's request to

10  immediately release him from Respondents' custody is also moot.  The Court therefore

11  denies this request.

12      **C.      Petitioner Does Not Need to Give Security to Issue This Preliminary**

13              **Injunction**

14      "The court may issue a preliminary injunction or a temporary restraining order only

15  if the movant gives security in the amount that the court considers proper to pay the costs

16  and damages sustained by any party found to have been wrongfully enjoined or

17  restrained."  Fed. R. Civ. P. 65(c).  The Ninth Circuit has "recognized that Rule 65(c)

18  invests the district court with discretion as to the amount of security required, if any."

19  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (cleaned up).

20      There is "no realistic likelihood of harm" to Respondents resulting from the

21  preliminary injunction because "the [Government] cannot reasonably assert that it is

22  harmed in any legally cognizable sense by being enjoined from constitutional violations."

23  *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983).  The Court is enjoining

24  Respondents because it found that they are likely encroaching on Caicedo-Ruiz's Due

25  Process rights, and thus, Respondents cannot assert they are being harmed.  *Supra* Section

26  IV.A.1.  Petitioners need not give security to issue this preliminary injunction.  *See*

27  *Calderon*, 2025 WL 2430609, at *5 (collecting cases where the court did not find security

28

necessary where the government was being enjoined from likely constitutional violations of re-detaining petitioner without a pre-deprivation hearing).

## V.    CONCLUSION

Accordingly, the Court GRANTS IN PART and DENIES IN PART Petitioner's requested preliminary injunction. The Court GRANTS Petitioner's requested preliminary injunction of enjoining and restraining Respondents from re-detaining Caicedo-Ruiz without notice and a pre-deprivation hearing before a neutral decisionmaker and DENIES the remainder of Petitioner's requests.

Finally, the Court sets a Case Management Conference for January 7, 2026, at 10:00 a.m. by Zoom video. The parties must file a joint case management statement, including a proposed case schedule, by December 31, 2025.

**IT IS SO ORDERED.**

Dated:  November 26, 2025 _____

NATHANAEL M. COUSINS
United States Magistrate Judge

United States District Court
Northern District of California

23